[No. F002889. Fifth Dist. Feb. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE F. WILLOUGHBY, Defendant and Appellant.

1056

**COUNSEL**

Louis P. Etcheverry for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Janice Rogers Brown and Krista Kmetz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### FRANSON, Acting P. J.—

#### STATEMENT OF THE CASE

Appellant was convicted following a jury trial of three sexual offenses involving Kathleen, a five-year-old neighbor child. Specifically, appellant was convicted in count one of a violation of Penal Code section 286, subdivision (c), sodomy with a child less than 14 years of age and more than 10 years younger than the defendant; count two, a violation of Penal Code section 288, subdivision (b), committing a lewd and lascivious act on a child less than 14 years of age by use of force or threat of great bodily harm; and count three, a violation of Penal Code section 261, subdivision (2), rape by force or fear. All three offenses were alleged to have been committed between April 13 and April 23, 1982. Appellant was sentenced to the aggravated term of eight years on each count, to run consecutive and full term to each other, for a total of twenty-four years.

This was appellant's second trial involving sexual offenses against Kathleen. Originally, appellant was charged and tried on 48 different counts occurring between February 1 and April 23, 1982. The information alleged repeated acts of forcible rape, sodomy, lewd and lascivious conduct with a child and other lesser sexual offenses. The jury was unable to agree on a verdict in the first trial except that it did find appellant not guilty of various counts not relevant to this appeal and not guilty of battery, a lesser included offense of the rape charges. A mistrial was declared as to those charges on which the jury could not reach a verdict.

Before retrial, appellant entered a "once in jeopardy" plea pursuant to Penal Code section 1016, subdivision 5. After an amended information was filed alleging only the three counts on which appellant now stands convicted, appellant withdrew his double jeopardy plea on advice of counsel.

For the reasons that follow we conclude the judgment must be reversed because the trial judge prejudicially erred in admitting into evidence over objection and as part of the prosecution's case-in-chief evidence of an uncharged sex offense allegedly committed three years earlier by appellant

against another victim. For the guidance of the trial court on retrial, we express our views on the admissibility of evidence of appellant's prior offense as it relates to his *identity* as the perpetrator of the crime. We also speak on the double jeopardy question.

## THE FACTS

During the early months of 1982, Barbara worked a 2:30 p.m. to 12:30 a.m. shift. A close neighbor, appellant's wife Phyllis, provided child care for Barbara's two young children, five-year-old Kathleen and Kathleen's younger brother Austin.

Kathleen and Austin went to the Willoughby house several days a week from February through much of April. Kathleen testified that almost every time she was in the house, appellant, a 65-year-old father of five, called her into his bedroom and committed various sexual acts upon her including vaginal intercourse, sodomy and oral copulation. She claimed appellant locked the bedroom door if she tried to leave; she said she cooperated because appellant made her and did not scream because she was frightened. Kathleen also claimed appellant showed her lewd photographs of naked men and women and paid her a dime on one occasion to orally copulate him. He warned her not to tell her mother of these things.

In April, after an incident which hurt her very badly, Kathleen told her mother what appellant had done to her. Barbara notified the Kern County Sheriff's Department, and appellant was arrested. Appellant waived his *Miranda* rights and denied ever having touched Kathleen except to spank her.

An emergency room physician at the Kern County Medical Center examined Kathleen and discovered a jagged tear running from her anus to vagina. Later, Dr. Bruce Woodling, an expert in the detection of sexual assault and molestation in children, examined Kathleen and found positive evidence that Kathleen had been repeatedly sodomized and had been subjected to repeated vaginal intercourse.

At trial, twelve-year-old Donna was permitted to testify that three years earlier, when she was nine years old, appellant and his wife "babysat" her one night at their house. Donna claimed appellant awakened her in the middle of the night and asked her if she had ever been "fucked." The next day, according to Donna, appellant, wearing a bathrobe, called her into his bedroom and asked her if she had a boyfriend, if she had been kissed, if she had started her period, if anyone had been in her "hole" and if she wore a bra. Without answering his questions, Donna claimed she left the

room but not before appellant squeezed her buttocks and told her they needed to talk some more.

Appellant testified in his own defense. He admitted having entered the bedroom where his daughter and Donna were sleeping. He claimed he saw Donna sleeping partially clad in a provocative position and awakened her to tell her to get under the covers. He admitted having a longer conversation with Donna the following day about problems he suspected she was having with her family, but denied questioning her about her sexual knowledge.

Appellant testified that as an elder in the Mormon Church, he considered child molesting as morally reprehensible as murder. While categorically denying any sexual activity with Kathleen, he admitted he did not particularly like her and described her as a truculent, overbearing, foul-mouthed little girl.

A number of character witnesses affirmed their belief in appellant's honesty, integrity and dedication to the church and its principles. They found nothing in appellant's character to suggest he had the propensity to molest children.

DISCUSSION

### I. *The uncharged offense.*

Appellant contends the trial court prejudicially erred in permitting Donna to testify that three years before the charged crime with Kathleen appellant made sexual overtures to her and grabbed her buttocks in a lewd and lascivious manner when she was an overnight guest in his home. According to appellant, the only purpose of this evidence was to show he had a bad character, i.e., a predisposition to sexually molest young girls. As such, he argues, the evidence is barred by the explicit provisions of Evidence Code section 1101, subdivision (a): "Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is *inadmissible* when offered to prove his conduct on a specified occasion." (Italics added.)

Respondent counters by arguing that Donna's testimony was properly admitted pursuant to the exception provided by Evidence Code section 1101, *subdivision (b):* "Nothing in this section prohibits the admission of evidence that a person committed a crime, . . . or other act when relevant to prove some fact (such as motive, . . . intent, . . . plan, . . . [or] identity, . . .) other than his disposition to commit such acts."

■ It is well established that evidence of other crimes or prior bad acts is inadmissible solely to prove the accused had the propensity or disposition to commit the crime charged. (Evid. Code, § 1101, subd. (a); *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366]; *People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883].) The purpose of the exclusionary rule is " 'to avoid placing the accused in a position of having to defend against crimes for which he has not been charged and to guard against the probability that evidence of other criminal acts having little bearing on the question whether defendant actually committed the crime charged would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, . . .' " (*People* v. *Haston, supra,* 69 Cal.2d 233, 244; see also *People* v. *Schader* (1969) 71 Cal.2d 761 at pp. 772-773; *People* v. *Thompson, supra,* 27 Cal.3d 303, 317.) In short, the evidence is excluded because of the danger of convicting an innocent person of the charged crime based on his or her prior bad record.

■ It is equally well settled that evidence may be admitted, even though it embraces evidence of the commission of another offense, if it logically tends to prove a material element in the People's case (Evid. Code, § 1101, subd. (b); *People* v. *Guerrero, supra,* 16 Cal.3d 719.) In ascertaining whether evidence of other offenses has a *tendency* to prove the material fact, the court must first determine whether or not the uncharged offense serves " " "logically, naturally, and by reasonable inference" ' " to establish that fact. (*People* v. *Thompson, supra,* 27 Cal.3d 303, 316.) The court " 'must look behind the label describing the kind of similarity or relation between the [uncharged] offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong.' " (*People* v. *Thompson, supra,* 27 Cal.3d 303, 316, quoting from *People* v. *Schader, supra,* 71 Cal.2d 761, 775, fn. omitted.)

■ Finally, even if evidence of other offenses is relevant under a theory of admissibility apart from proving a criminal disposition, it can be highly prejudicial; therefore, the law places other restrictions on its admissibility. First, the evidence must be " 'scrutinized with great care,' " and any doubts as to its relevancy for a permitted purpose must be resolved against its admissibility. (*People* v. *Thompson, supra,* 27 Cal.3d 303, 314.) Second, if the evidence is merely *cumulative* with respect to other evidence which the People may use to prove the same issue, it is excluded under a rule of necessity, i.e., if it is not needed to prove the prosecution's case, it is not

admitted. (*Id.,* at p. 318.) Finally, under Evidence Code section 352, the probative value of any evidence must outweigh its prejudicial effect. "Since 'substantial prejudicial effect [is] inherent in [such] evidence,' uncharged offenses are admissible only if they have *substantial* probative value. If there is any doubt, the evidence should be excluded." (*People* v. *Thompson, supra,* 27 Cal.3d at p. 318, fn. omitted; see also *People* v. *Tassell* (1984) 36 Cal.3d 77, 88 [201 Cal.Rptr. 567, 679 P.2d 1].)

 The first question to decide is whether the evidence of the uncharged offense against Donna was truly relevant to any material fact "actually in dispute" at the time the evidence was received. We hold that while it was relevant per se, it was not relevant to prove the fact for which it was admitted.

Donna's testimony was offered by the prosecution on the theory that it would show appellant's intent to sexually molest Kathleen. Indeed, during closing argument the prosecutor told the jury, "it's offered to corroborate the intent of Mr. Willoughby with regard to sexual acts against children. That's what it's offered for, to substantiate the intent issue and to show that he has a sexual interest in children." The trial court also instructed the jury in terms of CALJIC No. 10.36 (4th ed. 1979) that "[e]vidence as to such [other] acts with other children may be considered by you as tending to show, if it does show, defendant's intent at the time of the alleged offense charged against him and in rebuttal of his testimony."[1] No other limiting instruction was given to the jury concerning Donna's testimony.

The problem with the intent theory is that appellant never placed his intent in issue; he categorically denied any sexual involvement with Kathleen. Evidence of sex offenses with persons other than the victim of the charged crime is admissible only when proof of the defendant's intent is *ambiguous,* as when he admits the act and denies the necessary intent because of accident or mistake. (See *People* v. *Thomas, supra,* 20 Cal.3d 457, 467; *People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582]; *People* v. *Kelley, supra,* 66 Cal.2d 232, 242-243.) Since the only defense evidence showing that appellant ever touched Kathleen was his admission that he had spanked her, there was no

---

[1] Before admitting the evidence, the trial court out of the jury's presence ruled that it was admitting the evidence "for the purpose of intent and common plan, scheme and corroboration basically." The Supreme Court has recognized that "common scheme or plan" is nothing but a "'subordinate objective of proof, whose relevance depends on some other actual issue, such as mistaken identity or innocent intent.'" (*People* v. *Tassell, supra,* 36 Cal.3d 77, 84.) The court has also ruled that other-crimes evidence may not be admitted on the theory of corroborating the prosecutrix' testimony absent some legitimate issue actually in dispute such as intent or identity. (*Ibid.;* see also *People* v. *Thomas* (1978) 20 Cal.3d 457, 469-470 [143 Cal.Rptr. 215, 573 P.2d 433].)

ambiguity in his intent. Thus, it was error for the trial court to admit the evidence of this other offense and to instruct the jury that it could consider the evidence as proof of appellant's intent to molest Kathleen. Because intent was not in issue and because the trial judge failed to admonish the jury not to consider the evidence as proof of appellant's criminal disposition, the evidence could have been considered by the jury only to prove appellant's disposition to sexually molest children—the very purpose prohibited by Evidence Code section 1101, subdivision (a).

The admission of Donna's testimony obviously prejudiced appellant. It was the focal point of the prosecution's case; even the trial judge commented that if he was in error in admitting the evidence, the case would have to be reversed. Nor can we find the error harmless on the theory that Donna's testimony would have eventually been admitted as rebuttal evidence. First, appellant might not have testified if Donna's testimony had not been admitted as part of the prosecution's case-in-chief. We can speculate that it was the straw which impelled him to testify. ■ ■■■■ Second, even if appellant had testified without Donna's testimony, the failure of the trial court to give a limiting instruction to the jury on the use of Donna's testimony, i.e., that it should not be considered by the jury as proof of appellant's predisposition to sexually molest children (see CALJIC No. 2.50), coupled with the trial court's erroneous affirmative instruction that the evidence could be used to prove appellant's intent in sexually molesting Kathleen, would compel a reversal.[2]

■ For the purpose of guiding the trial court on retrial, we will express our views on the admissibility of Donna's testimony under appropriate limiting instructions to prove the fact of appellant's *identity* as the perpetrator of the charged offense. Appellant's not guilty plea places the burden on the prosecution to prove his guilt of the charged crime beyond a reasonable doubt. This obviously includes proof of appellant's identity as the perpetrator of the charged crime. Appellant has not given any indication to the

---

[2]Also, Donna's testimony cannot be considered harmless on the theory that it would have been admitted in any event to rebut appellant's evidence of his good character. Evidence of specific acts of a defendant are generally inadmissible to prove disposition to commit such acts even where the defendant has opened the question by introducing evidence of his good character. (*People* v. *Wagner* (1975) 13 Cal.3d 612, 618-619 [119 Cal.Rptr. 457, 532 P.2d 105]; see also Law Revision Com. com. to Evid. Code, § 1102.) Moreover, Donna's testimony would not be admissible to impeach appellant's implied assertion that as a Mormon he could not have done such a terrible thing as sexually molest a young girl, i.e., "child molestation is as reprehensible as murder." Evidence Code section 786 provides that "[e]vidence of [a witness'] traits of his character other than honesty or veracity, or their opposites, *is* inadmissible to attack or support the credibility of a witness." Evidence Code section 787 provides, "[s]ubject to Section 788 [prior felony conviction], evidence of specific instances of [a witness'] conduct relevant only as tending to prove a trait of his character is *inadmissible* to attack or support the credibility of [the] witness." (Italics added.)

prosecution that he will *not* raise the identity issue; in fact, he implied by his statement to the police at the time of his arrest that he would contest his identity by denying he had ever touched Kathleen except to spank her. ■ "If no such indication is given [that the defendant will *not* raise the identity issue], the prosecution may offer the evidence as part of its case in chief, because the prosecution has the burden of proving all elements of the offense, including . . . [the] identity of defendant as the perpetrator." (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 33.6, p. 1201, citing *People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]; see also Witkin, Cal. Evidence (1984 supp.) § 341A, p. 125.) ■ Certainly a more restrictive rule cannot be justified under the circumstances of this case. Here, appellant not only gave no indication he would not raise the identity issue, but also, by his statement, he implied that his sole defense was that he was not the person who molested Kathleen. In fact, it is difficult to imagine under the facts of this case any other defense available to appellant.[3]

Without Donna's testimony, the case will boil down to a credibility contest between Kathleen and appellant as to the identity of the perpetrator of the charged crimes. The evidence of the prior offense may, therefore, be essential to the prosecution's case-in-chief and cannot be deemed cumulative to Kathleen's testimony.

This brings us to the second critical question: whether Donna's testimony is the type of which may be introduced under Evidence Code section 1101, subdivision (b). ■ A special rule has developed when evidence of other offenses is offered to prove the defendant's identity as the perpetrator of the offense for which he is on trial. This rule states that "highly distinctive marks of similarity" between the prior offense and the charged crime are required for admissibility. (See *People* v. *Haston, supra,* 69 Cal.2d 233.) If this standard is met, it is then reasonable to conclude that the defendant committed the offense for which he is on trial. "Thus it may be said that the inference of identity arises when the marks common to the charged and

---

[3]We recognize there are sex cases which hold that a defendant's identity is not "in issue" in the prosecution's case-in-chief where the victim is personally acquainted with the defendant, such as where the accused is the victim's parent or teacher. (See *People* v. *Kelley, supra,* 66 Cal.2d 232; *People* v. *Kazee* (1975) 47 Cal.App.3d 593, 595 [121 Cal.Rptr. 221] and *People* v. *Covert* (1967) 249 Cal.App.2d 81 [57 Cal.Rptr. 220], both overruled on other grounds by *People* v. *Thomas, supra,* 20 Cal.3d 457; Comment, *Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses* (1977-1978) 25 UCLA L.Rev. 261, 283.) However, in these cases, unlike the present case, "the focus . . . of [the] case is likely to be on whether the alleged crime was ever committed" (see 25 UCLA L.Rev. *op. cit. supra,* p. 283, fn. 101) rather than on the question whether the defendant did it. In the present case, because the evidence is uncontradicted that Kathleen had been repeatedly molested, the only real issue for the jury to decide was whether appellant was the one who did it.

uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses." (*Id.*, at p. 246.) This rule applies to sex crimes as well as nonsex offenses. (*People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], overruled on other grounds by *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1].).

 In evaluating the degree of commonality between the charged and the uncharged offenses, the *circumstances* in which the crimes were committed as well as the facts of the crimes themselves are considered. (*People* v. *Tassell, supra,* 36 Cal.3d 77; *People* v. *Alcala* (1984) 36 Cal.3d 604, 632-633 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People* v. *Thornton, supra,* 11 Cal.3d 738, 757; *People* v. *Haston, supra,* 69 Cal.2d 233, 247.)

 We believe the *Haston* and *Thornton* requirements of highly distinctive common marks between the circumstances of the uncharged offense and the charged crime are met in the present case. Specifically, both incidents took place in appellant's bedroom at his residence under circumstances where appellant occupied a position of trust as a babysitter and the "father" of the house. Kathleen, the five-year-old victim, was forced to submit to appellant's sexual advances in the privacy of appellant's bedroom. Donna, the nine-year-old victim, was approached with sexual overtures by appellant first in the bedroom where she was sleeping with appellant's daughter and then the next day in appellant's bedroom. It was in appellant's bedroom that appellant touched Donna in a lewd manner. Thus, the probative value of Donna's testimony in proving appellant's identity as the perpetrator of the crimes charged against Kathleen is so strong and persuasive as to be almost conclusive. Although the common marks of similarity do not pertain precisely to the offenses themselves (appellant raped and sodomized Kathleen and showed her lewd pictures but only made sexual overtures and touched Donna in a lewd manner), they do pertain to the *circumstances* in which the two offenses were committed.

Unlike those sex offenses involving children where any one of several possible sex offenders could be the perpetrator of the charged crime (see *People* v. *Alcala, supra,* 36 Cal.3d 604; *People* v. *Tassell, supra,* 36 Cal.3d 77; *People* v. *Thornton, supra,* 11 Cal.3d 738; *People* v. *Guerrero, supra,* 16 Cal.3d 719; *People* v. *Kelley, supra,* 66 Cal.2d 232), the admission of Donna's testimony entails little risk of a misidentification of appellant as the perpetrator of the crimes against Kathleen. Therefore, "[l]ogic, reason, experience, and common sense" (1 Jefferson, Cal. Evidence Benchbook, *op.*

*cit. supra,* § 21.3, p. 501) tell us that if Donna's story is true, appellant is the one who molested Kathleen.

We express a caveat: although *People* v. *Collie* (1981) 30 Cal.3d 43, 63 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776] holds there is no *sua sponte* duty to instruct on the limited admissibility of evidence of previous offenses by a defendant (in *Collie* the defendant was charged and convicted of first degree murder of his wife and evidence was received of previous assaults by defendant on his wife), *Collie* recognizes that there may be the "extraordinary case" in which evidence of past offenses play such a dominant part in the case against the accused that it would be highly prejudicial without a limiting instruction. In this situation, the evidence "might be so obviously important to the case that *sua sponte* instruction would be needed to protect the defendant from his counsel's inadvertence [in failing to request a limiting instruction]." (*Id.,* at p. 64.) Because of the law's sensitivity to the admission of prior offenses in sex cases, we believe that if Donna's testimony is admitted on retrial a limiting instruction such as CALJIC No. 2.50 (1984 rev.) should be given to the jury *sua sponte.*

Finally, we observe that the admissibility of evidence of prior sex offenses is committed to the sound discretion of the trial court. We do not intend by the views expressed in this opinion to direct that Donna's testimony be admitted on retrial. This question will be determined by the trial judge in the context of the evidence then before the court and after carefully scrutinizing the evidence relating to the incident with Donna to see if it qualifies for admission under the rules of law. Particular care should be given to the weighing process required under Evidence Code section 352. (*People* v. *Alcala, supra,* 36 Cal.3d 604; *People* v. *Tassell, supra,* 36 Cal.3d 77; *People* v. *Thompson, supra,* 27 Cal.3d 303; *People* v. *Thornton, supra,* 11 Cal.3d 738; *People* v. *Kelley, supra,* 66 Cal.2d 232.)

II. *The prosecution is barred from retrying appellant on the rape charge alleged in count three.*

Appellant's argument that he received ineffective assistance of counsel at trial because his counsel permitted him to withdraw his double jeopardy plea is mooted by our reversal on the evidentiary point discussed above. Nevertheless, the reversal of a judgment "shall be deemed an order for a new trial" (Pen. Code, § 1262); this places the parties in the same position as if no trial had been had. (Witkin, Cal. Criminal Procedure (1963) Appeal, § 725, p. 699.) Thus, appellant must be allowed the opportunity of entering a new "once-in-jeopardy" plea on the amended information before retrial if he so desires. (See *Gomez* v. *Superior Court* (1958)

50 Cal.2d 640, 649-653 [328 P.2d 976].) For the guidance of the trial court, we shall discuss the double jeopardy question.

Appellant has argued that his acquittal at the first trial on the lesser included battery offenses precludes a retrial on the sodomy, rape and lewd and lascivious conduct charges alleged in the amended information because battery is a necessary element of each of those offenses. Appellant's argument fails as to the sodomy and lewd and lascivious conduct offenses (counts one and two), but it succeeds as to the rape offense (count three).

Appellant was acquitted at the first trial of battery after the jury was instructed that battery was a lesser included offense of *rape*—not of sodomy or lewd and lascivious conduct. Any retrial on the rape charge was thus barred by the terms of Penal Code section 654.[4] Since the act of "battery" inherent in the rape of Kathleen was plainly a different "battery" than that inherent in the sodomy and, on this record, the lewd and lascivious conduct, the jury's acquittal on battery as a lesser included offense of rape was in no sense an implied acquittal of a necessary element of sodomy and lewd and lascivious conduct.[5]

Factual differences between criminal acts—especially foundational differences such as the different physical contact inherent in rape, sodomy, and lewd and lascivious conduct—warrant a finding of separate offenses. Thus, the separate offenses of sodomy and lewd and lascivious conduct in the present case could properly be recharged against appellant with no double jeopardy bar. As stated in *People* v. *Tenner* (1944) 67 Cal.App.2d 360 [154 P.2d 9]: ". . . 'exactly the same facts were required to prove an offense under count one as to establish a crime under count two.' Such is not the case here. While as above stated the three separate and distinct acts of appellant were closely related in point of time and were all committed on the same night and in the same room, they were not identical in point of time or circumstances and were therefore not the same offenses either in law or in fact." (*Id.*, at p. 365; see also *Ross* v. *United States* (9th Cir. 1939) 103 F.2d 600; cf. *People* v. *Calkins* (1935) 8 Cal.App.2d 251 [47 P.2d 544].)

---

[4]Penal Code section 654 reads: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; *an acquittal* or conviction and sentence *under either one bars a prosecution for the same act or omission under any other.*" (Italics added.)

[5]The fact that appellant was charged with lewd and lascivious conduct pursuant to Penal Code section 288, subdivision *(a)*, in the first information and Penal Code section 288, subdivision *(b)*, in the second information is not consequential.

III. *Appellant's other contention.*

 On retrial, the prosecution should not be permitted to offer evidence of a sexual trauma expert on the subject of the victim's truthfulness. (See *People* v. *Bledsoe* (1984) 36 Cal.3d 236 at pp. 248-249 [203 Cal.Rptr. 450, 681 P.2d 291].)

The judgment is reversed.

Hanson (P. D.), J. and Hamlin, J., concurred.