208 Cal.App.3d 1099 (1989)
256 Cal. Rptr. 647
THE PEOPLE, Plaintiff and Respondent,
v.
ROBERT DEAN BRUCE, Defendant and Appellant.
Docket No. A041253.
Court of Appeals of California, First District, Division Four.
March 20, 1989.
*1101 COUNSEL
Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, Peter R. Silten, Chief Assistant State Public Defender, and Susan M. Kwan, Deputy State Public Defender, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Aileen Bunney and Brenda P. Reyes, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
CHANNELL, J.
A jury convicted appellant Robert Dean Bruce of forcible rape. (Pen. Code, § 261, subd. (2).) Sentenced to 13 years in state prison, he appeals, contending that the trial court erred by admitting evidence of a prior rape conviction to prove whether his present victim consented to intercourse. We agree and reverse the judgment.

I. FACTS
On the night of March 23-24, 1987, L.A. went with a friend to the Berkeley marina to meet a third friend. About 10 p.m., L.A. left her companion and walked up University Avenue to search for their friend. A man, later identified as appellant Robert Dean Bruce, drove up beside her and began talking to her. He offered her a ride, but after some conversation she decided to proceed on foot. Bruce told her that she had "better get in the car" and that he had a gun. Fearful, L.A. did as he instructed. Bruce drove back to the marina and parked his car behind some bushes in a parking lot. He told L.A. "I'm going to make love to you." When she screamed, begged *1102 him to let her go, and tried to get out of the car, Bruce said, "Don't make me use my gun on you." At his instruction, L.A. removed her clothes and climbed into the back seat of the car, where Bruce orally copulated and raped her.
L.A. noticed that Bruce sweated heavily during intercourse. He first identified himself as Robert, but later said that his name was Dave or David. When he asked her for money, she gave him some. L.A. escaped from Bruce and hid in some bushes until friends found her about 1 a.m. She was taken to a hospital and examined as a possible victim of sexual assault. After initially refusing to do so, L.A. identified Bruce as her assailant from a photographic lineup.
Bruce was arrested and charged with kidnapping, forcible rape, and robbery. (Pen. Code, §§ 207, 211, 261, subd. (2).) The information also alleged that he kidnapped L.A. for the purpose of rape and that he had been convicted of a prior serious felony. (Id., §§ 667, 667.6, subd. (a), 667.8, subd. (a).) He signed a written statement for police that he had met the victim on the night of the alleged crime, but that he had done nothing more than give her a ride in his car, adding that he went home immediately after dropping her off at the marina parking lot.
At trial, L.A. testified and identified Bruce as the perpetrator. Over his objection, Veronica M. testified that one night in 1981 while she was walking Bruce had approached her in his car. He told her that his name was David and asked if she wanted a ride. When she refused, he held up an object that appeared to be a gun and Veronica got into the car. He drove her to a parking lot at the Berkeley marina where he orally copulated and raped her. She noticed that he sweated heavily during intercourse. Bruce had pleaded guilty to a charge of forcible rape stemming from this incident and served a prison term for it.
Bruce did not testify at trial. The jury convicted him of forcible rape, but was unable to reach a verdict on the other charges or the allegation that the kidnapping was committed for purposes of rape. The other charges and the special allegation were dismissed. Outside the presence of the jury, Bruce admitted the truth of the prior conviction enhancement allegation. He was sentenced to thirteen years in state prison  the upper term of eight years for the rape and five years for the prior conviction. (See Pen. Code, § 667.)

*1103 II. DISCUSSION
(1a) On appeal, Bruce contends that the trial court erred by admitting evidence of the 1981 rape. He contends that the evidence was irrelevant and prejudicial, and that reversal of his conviction is compelled because of its erroneous admission. (See Evid. Code, § 1101.)[1] Before trial, he moved to suppress evidence of the 1981 rape of Veronica. Bruce conceded that the 1981 crime was similar to the charged rape. At this stage of the case, identity was an issue and the motion was properly denied.
In mid-trial, as the prosecution prepared to call Veronica to testify about the 1981 rape, the defense stipulated that Bruce had engaged in sexual intercourse with L.A. Outside the presence of the jury, he asked the trial court to reconsider its earlier ruling, urging that evidence of the 1981 rape was no longer relevant because identity was no longer an issue. Nevertheless, the trial court permitted Veronica to testify, while admonishing the jury that her testimony was admitted only on the issue of consent. After she testified, Bruce moved for a mistrial. He stated that his only defense was not reasonable, good faith belief in consent, but L.A.'s actual consent. He argued that the 1981 rape of Veronica was irrelevant to this defense. The trial court denied the motion for mistrial.
In her closing statement, the prosecutor argued that Veronica's evidence tended to establish that L.A. did not consent to intercourse and was relevant as to whether Bruce had a reasonable, good faith belief that she consented. Bruce argued that the evidence was irrelevant and urged the jury to disregard it. He argued that only L.A.'s state of mind was at issue and that she was not a credible witness. The jury was instructed that the victim's lack of consent was an element of forcible rape and that the defendant's reasonable, good faith belief in her consent was a defense to that crime. It was also reminded not to consider Veronica's testimony for any purpose other than to determine whether Bruce had a reasonable, good faith belief that L.A. consented to intercourse. "In other words," the judge instructed, this evidence "is ... admissible only on the issue of consent." When Veronica's testimony was reread to the jury during deliberations, the court again admonished the jury that the testimony was admissible only on the issue of consent.
Before sentencing, Bruce moved for a new trial on the basis of the admission of Veronica's testimony and the court's failure to limit the consent instructions as he had requested. He argued that he did not put on any *1104 evidence about his state of mind  on whether he had a reasonable, good faith belief that L.A. had consented. Bruce noted that the judge's instructions had, in effect, treated consent and reasonable, good faith belief in consent as interchangeable. He complained that the court lightened the prosecutor's burden of proving lack of consent, rejected his requested instructions on whether the People had proven lack of consent, and compounded the problem by instructing the jury that it could consider the challenged evidence to determine whether he had a reasonable, good faith belief in consent. He noted that during argument he avoided referring to his state of mind, focusing instead on the victim's consent. The trial court denied the motion for new trial.
By stipulating that he had engaged in sexual intercourse with L.A., Bruce appropriately raised the defense of consent. (2) Lack of consent is an element of rape and the defense of consent is established if the People do not carry their burden of proof of this element beyond a reasonable doubt. (See Pen. Code, § 261, subd. (2).) This defense is distinct from the Mayberry defense  the defense of reasonable, good faith belief that the victim consented. When a defendant claims that the victim consented, the jury must weigh the evidence and decide which of the two witnesses is telling the truth. The Mayberry defense permits the jury to conclude that both the victim and the accused are telling the truth. The jury first considers the victim's state of mind and decides whether she consented to the alleged acts. If she did not, the jury will view the events from the defendant's perspective to determine whether the manner in which the victim expressed her lack of consent was so equivocal as to cause the accused to reasonably believe that she consented when she did not. (People v. Romero (1985) 171 Cal. App.3d 1149, 1155-1156 [215 Cal. Rptr. 634]; see People v. Rhoades (1987) 193 Cal. App.3d 1362, 1367 [238 Cal. Rptr. 909]; see also People v. Mayberry (1975) 15 Cal.3d 143, 153-158 [125 Cal. Rptr. 745, 542 P.2d 1337].)
These two defenses are logically consistent and often arise in the same case. However, a defendant who raises consent as a defense does not necessarily assert a second defense of reasonable, good faith belief in consent. (People v. Romero, supra, 171 Cal. App.3d at p. 1154; see People v. Rhoades, supra, 193 Cal. App.3d at pp. 1369-1370.) One relying on the Mayberry defense must produce some evidence of the victim's equivocal conduct that led the accused to reasonably believe that there was consent. When asserting the defense of consent, the defendant focuses on the victim's state of mind alone. The defense may entail no more than the assertion that the complaining witness lied about the events that took place. In that case, there would be no evidence that the victim acted equivocally. (People v. Romero, supra, at p. 1156; see People v. Rhoades, supra, at pp. 1369-1370.) *1105 (1b) In the case at bar, Bruce presented no evidence of his state of mind; instead, he challenged L.A.'s credibility. He argued that she had actually consented, not that he believed that she had. Without any evidence supporting a Mayberry defense and absent any attempt by Bruce to put this defense before the jury, the issue of whether he reasonably and in good faith believed that L.A. consented to intercourse was not at issue at trial.
(3) The admissibility of the prior-crime evidence depends on three factors: (1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence. (People v. Thompson (1980) 27 Cal.3d 303, 315 [165 Cal. Rptr. 289, 611 P.2d 883].) The evidence is only material if the ultimate fact sought to be proved in the proceeding is actually in dispute. If an accused has not actually placed that ultimate fact in issue, evidence of uncharged offenses may not be admitted to prove it. (Id., at p. 315.) (1c) The only ultimate fact Bruce placed in issue at trial was whether L.A. actually consented to intercourse. To determine whether the uncharged crime had a tendency to prove the material fact, we must determine whether or not the uncharged crime serves "`"logically, naturally, and by reasonable inference"'" to establish that fact. (Id., at p. 316.) In the case at bar, evidence of the 1981 rape of Veronica  a different incident involving a different victim  had no tendency to prove or disprove whether L.A. consented. The evidence of the prior rape was therefore irrelevant to the ultimate fact of consent or lack of it. (See § 210; see also People v. Thompson, supra, at p. 317.) Finally, section 1101 prohibits admission of this evidence. (§ 1101, subd. (a); People v. Guerrero (1976) 16 Cal.3d 719, 724 [129 Cal. Rptr. 166, 548 P.2d 366].) This prohibition is absolute when it applies. (People v. Alcala (1984) 36 Cal.3d 604, 631 [205 Cal. Rptr. 775, 685 P.2d 1126].) Admission of character evidence is permitted only when relevant to prove some fact other than the defendant's disposition to commit the crime, such as whether a defendant charged with rape "did not reasonably and in good faith believe that the victim consented" to the charged act. (§ 1101, subd. (b); see Stats. 1986, ch. 1432, § 2.) However, the Mayberry defense was not at issue at trial, and the statute does not permit admission of this evidence on the issue of actual consent. (See § 1101, subds. (a)-(b).) The evidence of Bruce's 1981 rape does not meet the criteria for admissibility to prove consent.
On appeal, the Attorney General urges that even if the evidence was not admissible on consent, it was admissible to establish Bruce's intent. (4) Rape is a general intent crime. (People v. Franklin (1976) 56 Cal. App.3d 18, 27-28 [128 Cal. Rptr. 94].) The California Supreme Court *1106 has held that evidence of other sex offenses is admissible on the issue of intent only when proof of the defendant's intent is ambiguous. When the defendant asserts a defense of consent but not a Mayberry defense, the defendant's intent is unequivocal and the evidence is not admissible. (People v. Tassell (1984) 36 Cal.3d 77, 88, fn. 7 [201 Cal. Rptr. 567, 679 P.2d 1]; see People v. Key (1984) 153 Cal. App.3d 888, 894-895 [203 Cal. Rptr. 144].)[2]
(1d) The issue of consent to the intercourse was the focal point of the trial. Bruce was convicted only of forcible rape. In these circumstances, it is reasonably probable that, absent the admission of this evidence as proof of rape, a result more favorable to the defendant would have been reached. (People v. Rivera (1985) 41 Cal.3d 388, 393 [221 Cal. Rptr. 562, 710 P.2d 362]; see People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den. 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70].) Therefore, the error was prejudicial on the rape count.
The People urge that the evidence was admissible to establish that Bruce kidnapped his victim with the intent to commit rape. At the time that Veronica's testimony was permitted, Bruce was alleged to have kidnapped L.A. for purposes of committing rape. This allegation does require proof of a specific intent. (People v. Hernandez (1988) 46 Cal.3d 194, 200-204 [249 Cal. Rptr. 850, 757 P.2d 1013]; see Pen. Code, § 667.8, subd. (a).) However, even if the evidence could have been admissible to show an intent to kidnap in order to commit rape, the jury was not allowed to consider the evidence for this purpose. To the contrary, the jury was repeatedly and specifically instructed to consider Veronica's testimony only on the issue of consent in the rape case. It was impliedly told that it could not consider this evidence on any other offense and was specifically instructed that it could not consider it for "any other purpose." We must presume that the jury followed this instruction. (People v. Ryan (1981) 116 Cal. App.3d 168, 179 [171 Cal. Rptr. 854].) Even if we were to find that the evidence was admissible on this basis, this would not cure the prejudice resulting from the evidence's admission on the rape charge. The trial court's erroneous instruction that Veronica's testimony was admissible on the issue of consent and its failure to instruct the jury that the evidence was, under this theory, admissible on intent would still constitute reversible error. (See People v. Willoughby (1985) 164 Cal. App.3d 1054, 1064 [210 Cal. Rptr. 880] [failure to instruct that evidence was not admissible to show predisposition to commit crime and erroneous instruction that evidence could be used to prove intent compels reversal].)
*1107 The judgment is reversed.
Anderson, P.J., and Poche, J., concurred.
NOTES
[1] All statutory references are to the Evidence Code, unless otherwise indicated.
[2] It appears that Tassell has overruled sub silentio a decision of this Division holding that intent is always at issue when a defendant charged with forcible rape contends that his victim consented. (See People v. Jackson (1980) 110 Cal. App.3d 560, 566 [167 Cal. Rptr. 915].)